UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


JACQUELINE PATTERSON EDWARDS          CIVIL ACTION

VERSUS                                NO: 09-4384

ST. JOHN THE BAPTIST PARISH,          SECTION: J(1)
ET AL


<u>**ORDER AND REASONS**</u>

Before the Court are multiple motions, including the
following motions to dismiss: Defendants St. John the Baptist
Parish, Debbie Labit Stricks, William J. Hubbard, Patrick McTopy,
and Mike Henderson's **Motion to Dismiss (Rec. Doc. 40)**; Defendants
Jefferson Parish, Tim Whitmer, and Aaron Broussard's **Motion to
Dismiss (Rec. Doc. 48)**; Defendant Parson and Sanderson, Inc.'s
**Motion for Summary Judgment or Alternative Motion to Dismiss
(Rec. Doc. 57)**; Defendant Hubbard Enterprises, Inc.'s **Motion to
Dismiss Pursuant to F.R.C.P. 12(b)(1) for Lack of Standing, and
Pursuant to F.R.C.P. 12(b)(6) for Failure to State a Claim Upon
Which Relief Can Be Granted (Rec. Doc. 74)**; Defendant Tim
Whitmer, Lagniappe Industries, LLC, and Dawn Whitmer's **Motion to
Dismiss Case (Rec. Doc. 76)**; Defendants Aaron F. Broussard's

**Motion to Dismiss (Rec. Doc. 126)**; and Defendant Pipeworks
Plumbing and Demolition, LLC's **Motion to Dismiss (Rec. Doc. 130)**,
and supporting memoranda.  Plaintiff Jacqueline Patterson Edwards
has filed **Response Memoranda in Opposition** to all of these
motions to dismiss **(Rec. Docs. 71, 84, 88, 89, 103, 129, and
133)**.

The other pending motions before the court at this time
include two motions for sanctions: Defendant St. John the Baptist
Parish, Debbie Labit Stricks, William J. Hubbard, Patrick McTopy,
and Mike Henderson's **Motion for Sanctions (Rec. Doc. 52)** and
Defendants Jefferson Parish, Tim Whitmer, and Aaron Broussard's
**Motion for Sanctions (Rec. Doc. 66)**; as well as Plaintiff's
**Motion for this Court to Take Judicial Notice of Certain
Defendants Guilty Pleas in Pending Criminal Matters (Rec. Doc.
134)**.  Plaintiff has filed a **Memorandum in Opposition** to the
motions for sanction **(Rec. Doc. 87)**.

<u>**PROCEDURAL HISTORY AND BACKGROUND FACTS**</u>

In June of 2009, Plaintiff, the owner of residential rental
property located in St. John the Baptist Parish at 2132 Oaktree
Drive, LaPlace, Louisiana, began discussions with Mr. Florentio
Garia and Mr. Adrian Rodriguez for the purpose of establishing a
landlord tenant relationship.  Garcia and Rodriguez informed

Plaintiff that they, along with seven of their family members, were interested in leasing Plaintiff's property. Plaintiff then met with Garcia and Rodriguez and collected application fees and processed their application. After completing the application screening process, Plaintiff executed a lease agreement and faxed the agreement to Garcia and Rodriguez. The following day, Garcia and Rodriguez took a copy of the lease agreement to the local water authority and were granted a permit for water usage at the dwelling. On that same day, Garcia and Rodriguez also obtained an electric service account for the property. Garcia and Rodriguez then went to the property, where they were scheduled to meet with Plaintiff to obtain a key to the dwelling. However, while Garcia, Rodriguez, and the seven other potential tenants were waiting for Plaintiff or her agents, Defendant Debbie Labit Stricks, a code enforcement officer of Defendant St. John the Baptist Parish, arrived at the property and allegedly informed the potential tenants that they could not reside at the property because doing so would be a direct violation of St. John the Baptist Parish's local zoning ordinances. Stricks then placed a written notice on the front door of the property. The notice stated that Plaintiff should contact Stricks immediately concerning her violation of local ordinance R1-A. However, Plaintiff never contacted Stricks, nor was Plaintiff ever cited

for violating R1-A or any other code ordinance.

Although the pleadings are not clear on this issue, it appears that after Garcia, Rodriguez, and the seven other potential tenants–all of whom are non-white/Hispanic males over the age of 18–had the confrontation with Stricks, they decided not to occupy the property. Accordingly, Plaintiff, outraged by what she believed to be a conspiracy to maintain and control the racial and ethnic composition of communities in St. John the Baptist Parish through racially discriminatory and arbitrary selective enforcement of the parish's code ordinances, filed suit in this court on July 13, 2009.

In Plaintiff's original complaint, she alleged that Defendants St. John the Baptist Parish, Debbie Labit Stricks, and William J. Hubbard were all liable for violating the following: 1) the Fair Housing Act, 42 U.S.C. § 3601, et seq.; 2) 42 U.S.C. § 2000a, et seq.; 3) 42 U.S.C. § 1981, et seq.; 4) 42 U.S.C. § 1982, et seq.; 5) 42 U.S.C. § 1983, et seq.; 6) 42 U.S.C. § 1985, et seq.; 7) the Due Process Clause of the 14th Amendment; 8) the Equal Protection Clause of the 14th Amendment; 9) the Assembly Clause of the 1st Amendment; 10) the Takings Clause of the 5th Amendment; 11) Louisiana Equal Housing Opportunity Act; 12) Louisiana Freedom from Discrimination Law; 13) Louisiana Real Property Law; 14) Intentional Infliction of Emotional Distress;

4

15) Negligent Infliction of Emotional Distress; and 16) Tortious Interference with Business Dealings. Plaintiff requested $6.7 million in damages for the aforementioned claims.

In September of 2009, media outlets began to report that Defendant, former St. John the Baptist Parish President William Hubbard was to allegedly plead guilty to charges of conspiracy to solicit bribes from local vendors. On October 28, 2009, Plaintiff amended her initial complaint to address these allegations. Plaintiff's amended complaint included a seventeenth count as to the original Defendants. The amended complaint also added 13 new defendants: Jefferson Parish; Tim Whitmer; Aaron Broussard; Parson and Sanderson, Inc.; Hubbard Enterprises, Inc.; Lagniappe Industries, LLC; Dawn Whitmer; Pipeworks Plumbing and Demolition, LLC; Davezac Consulting Engineers, LLC; Ray A. Davezac; Patrick McTopy; Mike Henderson; and Jane and John Doe(s). The seventeenth count against the original defendants, and the sole count against the new defendants, alleged that all of the defendants were liable for racketeering and conspiring to engage in a pattern of racketeering activity, all in violation of 18 U.S.C. §§ 1961-64.

Since Plaintiff filed her amended complaint, Defendants have filed various motions to dismiss the original and amended complaints, the latest of which was filed on May 4, 2010. <u>See</u>

5

<u>Rec. Docs. 40, 48, 57,74, 76, 126, 130</u>.  Defendants have also

filed motions asking this Court to sanction Plaintiff for filing

the current suit.  <u>See</u> <u>Rec. Docs. 52 and 66</u>.  Also during this

time, Defendants William Hubbard and Ray Davezac have both pled

guilty to conspiring to solicit and give bribes involving a

public official, in violation of 18 U.S.C. §§ 371 and 666.

Plaintiff has filed a motion asking this Court to take judicial

notice of these guilty pleas.  <u>See</u> <u>Rec. Doc. 134</u>.

After reviewing the motions, memoranda of parties, and the

applicable law, the Court finds as follows:

## **THE PARTIES' ARGUMENTS**

Defendants argue, *inter alia*, that Plaintiff does not have

standing to bring the current suit because according to

Defendant, Plaintiff has not suffered any personal injury that is

traceable to Defendants' allegedly unlawful conduct.  Defendants

further argue that even if this court finds that Plaintiff has

standing to bring her claims, Hubbard, McTopy, and Stricks are

government officials and therefore enjoy qualified immunity from

Plaintiff's claims.  Additionally, Defendants argue that local

ordinance R1-A is constitutional on its face and accordingly, no

fair housing laws, equal housing laws, or any constitutional

rights, were violated when Stricks allegedly informed the

potential tenants that they would not be able to reside at

6

Plaintiff's property.

In relation to Plaintiff's Louisiana tort claims, Defendants assert that Plaintiffs' negligent infliction of emotional distress should be dismissed because such an action is not recognized in the state of Louisiana. Defendants further state that Plaintiff's intentional infliction of emotional distress and her tortious interference of business claims should be dismissed pursuant to Rule 12(b)(6) because she has failed to state a cause of action for these claims. Lastly, Defendants argue that Plaintiff lacks standing to bring these actions, and even if she did possess the requisite standing, she has failed to state a claim.

Plaintiff, on the other hand, argues that these motions to dismiss should not be granted. According to Plaintiff, Defendants have failed to meet the applicable standards necessary to prevail on a motion to dismiss. Plaintiff argues: 1) that she has pled enough facts to state a claim to relief that is plausible on its face as to all of her claims; 2) that she has established her burden of proving that she has standing in this matter; and 3) that none of the defendants are entitled to qualified immunity in this matter.

**DISCUSSION**

**I.  Legal Standards**

Defendants argue many reasons as to why this Court should dismiss Plaintiff's claims; however, their primary argument that Plaintiff has failed to state a claim for which relief can be granted is dispositive.  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, __U.S.__, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.  "A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations.  Iqbal, 129 S.Ct. at 1949-50.

Although *pro se* plaintiffs are held to less stringent standards than those drafted by lawyers, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Taylor v. Books A

8

<u>Million, Inc.</u>, 296 F.3d 376, 378 (5th Cir. 2002).  Also, "pro se

status does not give plaintiffs a prerogative to file meritless

claims."  <u>Olstad v. Collier</u>, 205 Fed. Appx. 308, 310 (5th Cir.

2006) (citing <u>Farquson v. MBank Houston, N.A.</u>, 808 F.2d 358, 359

(5th Cir. 1986)).

## II.  Plaintiff's Claims

It is obvious that although Plaintiff was never formally

denied the opportunity to lease her property to the potential

tenants, she strongly believes that she was wronged by

Defendants' actions.  In her complaint, amended complaint, and

RICO Case Statement, she has alleged a myriad of facts,

conspiracies, and injuries that she allegedly suffered at the

hands of Defendants.  This court has undertaken painstaking

efforts to dissect these pleadings in an effort to sift out any

plausible and merit worthy claims.[1]  Notwithstanding those

efforts, this court finds that Plaintiff's claims lack merit and

that it is not plausible that she is entitled to relief on any of

---

[1]It appears that some of the defendants did not take
Plaintiff's shotgun approach seriously.  Those defendants further
complicated this process by failing to properly address some of
Plaintiff's claims and failing to submit well-researched and
comprehensive motions.  <u>See</u>, <u>e.g.</u>, Defendants' Motion to Dismiss
(Rec. Doc. 40) (citing the overturned <u>Conley v. Gibson</u>, 355 U.S.
41, 45-46 (1957) legal standard for a Rule 12(b)(6) motion and
wrongly referring to <u>Encalade v. Thomas</u>, 2009 WL 1704461 (E.D.
La. Jun. 12, 2009) as support for this standard).

her claims.

**A.  Qualified Immunity**

Prior to addressing Plaintiff's numerous claims, the court
finds it necessary to address Defendants Stricks, Hubbard,
McTopy, and Henderson's assertion of qualified immunity.  The
issue of whether immunity applies is a factual question, related
to the merits of the case.  <u>Baker v. Putnal</u>, 75 F.3d 190, 197
(5th Cir. 1996) (citing <u>Scheur v. Rhodes</u>, 416 U.S. 232 (1974)).
Therefore, a decision by the court on the qualified immunity
issue would be premature at this stage.  <u>See</u> <u>Baker</u>, 75 F.3d at
197 (stating that a defendant's assertion of qualified immunity
should generally not be the basis to dismiss for failure to state
a claim).  The defendants may however raise this issue, if
necessary, at a later stage in these proceedings.

**B.  The Fair Housing Act, 42 U.S.C. § 3601, et seq.**

Plaintiff alleges that Defendants St. John the Baptist
Parish, Hubbard, McTopy, Henderson, and Stricks violated her
rights under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, et
seq.  A claim brought under the FHA "may be established not only
by proof of discriminatory intent, but also by proof of a
significant discriminatory effect." <u>Artisan/American Corp. v.
City of Alvin, Tex.</u>, 588 F.3d 291 (5th Cir. 2009).  As discussed
in detail below, this court finds that it is not plausible that

10

Plaintiff is entitled to relief on either theory.

### 1. Discriminatory Intent

Defendants allege that Plaintiff's FHA claims should be dismissed because she has not stated enough to show it is plausible that she is entitled to relief. This court agrees with Defendants. A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. Although Plaintiff is African-American, she has not alleged any factual content that allows this court to reasonably draw the inference that the defendants ascertained her race or that their actions resulted in a significant discriminatory effect. Plaintiff never interacted with any of the defendants and does not allege that she submitted any documents which allowed them to ascertain her race. Instead, Plaintiff alleges that the defendants maintain offices in the same building as the local water authority and that their offices are intentionally positioned to "monitor, screen and determine the race and ethnicity of each person applying for a local water permit." Rec. Doc. 22, pg. 22 ¶ 81. She further alleges that defendants facilitated the requirement for every household to make an application for utilities at that location so that the defendants could systematically determine the race and ethnicity

of all households in the parish in furtherance of their conspiracy to illegally, wrongfully, maliciously and recklessly control and determine the racial and ethnic composition of communities in the parish.  Id.  According to Plaintiff, it was by this method the defendants obtained her race and decided to harass her potential tenants.

Based on these allegations, it is not reasonable to infer that defendants are liable under the FHA.  Without knowing Plaintiff's race, the defendants could not have intentionally discriminated against her on the basis of race.  This court does not believe that it is reasonable to infer that the parish's water permit requirement was established for the ulterior motive of ascertaining the race of residents.  Taken as true, these allegations are consistent with the Plaintiff's allegations that defendants intentionally discriminated against her, "[b]ut given more likely explanations, they do not plausibly establish this purpose."  Iqbal, 129 S. Ct. at 1951.  As between the "obvious alternative explanation [for requiring water permits] and the purposeful, invidious discrimination [Plaintiff] asks us to infer, discrimination is not a plausible conclusion."[2]  Iqbal,

_____

[2]For these same reasons, it is not plausible that Plaintiff can show that she was discriminated against because of her race and therefore, Plaintiff's §§ 1981, 1982, 1985 and Louisiana Equal Housing Opportunity Act claims must also be dismissed.

129 S. Ct. at 1951-52 (citing <u>Twombly</u>, 550 U.S. at 567).

Further, even if this court could reasonably infer that this process was used to ascertain Plaintiff's race, Plaintiff's claims stem from the manner in which the defendants allegedly harassed the potential tenants. She alleges that the defendants harassed them because they were non-white/Hispanics. She has not made any well-pled factual allegations relating to whether the defendants would have treated the potential tenants any differently if the Plaintiff, herself, were not an African American. Accordingly, Plaintiff's FHA claims should be dismissed because she has not stated enough to show it is plausible that the defendants discriminated against her because of her race.

   *2.   Proof of a Significant Discriminatory Effect*

Likewise, this court does not believe it is plausible that Plaintiff is entitled to relief under the FHA in accordance with the "significant discriminatory effect" theory. Plaintiff's allegations in regard to this theory are merely legal conclusions "masquerading as factual conclusions[.]" <u>Taylor</u>, 296 F.3d at 378. Specifically, without any factual statements for support, she states that defendants treated her "differently than other similarly situated white/non-Hispanic home owners" and that the defendants enacted local dwelling ordinances for the purpose of

13

maintaining and controlling the racial and ethnic composition of the communities in St. John the Baptist Parish and for the purpose of limiting the number of non-white/Hispanics who reside in the parish. Rec. Doc. 22, pg. 30 ¶ 103; pg. 32 ¶ 109. These allegations are conclusions that merely recite a cause of action without any factual support. Therefore, Plaintiff's complaint falls short of plausibility and her claim that she is entitled to relief under the "significant discriminatory effect" theory should be dismissed. See Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 557) (stating that where a complaint pleads facts that are merely consistent with liability, the complaint falls short of plausibility and the plaintiff is not entitled to relief).

### C. 42 U.S.C. § 2000a, et seq.

Plaintiff alleges that Defendants St. John the Baptist Parish, Hubbard, McTopy, Henderson, and Stricks violated her rights under 42 U.S.C. § 2000a, et seq. Section 2000a states:

> All persons shall be entitled to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin.

42 U.S.C. § 2000a(a). A claim under § 2000a necessarily requires a Plaintiff to allege that she was denied access to public

accommodations.  See e.g., Fahim v. Marriott Hotel Services, Inc., 551 F.3d 344 (5th Cir. 2008).  Plaintiff's allegations revolve around her attempt to lease her property to the potential tenants and the defendants' alleged denial of her attempt to do so.  Even if Defendants wrongfully denied her the right to lease the property, such a denial is not related to Plaintiff's "enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation."  § 2000a(a).  Plaintiff has not asserted any allegations that would indicate that she was entitled to, but denied, the enjoyment of any public accommodations.  Accordingly, her § 2000a claim must be dismissed pursuant to 12(b)(6).

**D. Constitutional Law Claims**

  *1. Due Process Clause of the 14th Amendment*

Plaintiff has asserted three claims under the Due Process Clause of the 14th Amendment.  First, she alleges that the defendants knowingly and intentionally discriminated against her because of her race.  As stated above, this court does not believe it is plausible that defendants ascertained Plaintiff's race or that they knowingly and intentionally discriminated against her because of her race.  Therefore, Plaintiff's due process discrimination claim should be dismissed.

Second, Plaintiff alleges that the defendants knowingly and

15

intentionally enacted ordinances which are unconstitutionally
overly broad and vague, all in violation of her procedural due
process.  Plaintiff's allegations relate to various local zoning
ordinances.  When analyzing a procedural due process claim in
relation to a local ordinance, the dispositive inquiry is whether
the enactment of the local ordinance was a legislative or
administrative action.  If the action is classified as
legislative, procedural due process requirements do not apply.
Jackson Court Condominiums, Inc. v. City of New Orleans, 874 F.2d
1070, 1074 (5th Cir. 1989) (citing Bi-Metallic Investment Co. v.
State Board of Equalization, 239 U.S. 441, 445 (1915); United
States v. LULAC, 793 F.2d 636, 648 (5th Cir. 1986)).  According
to the Fifth Circuit, where a zoning decision has been made by an
elected body, the action is classified as either legislative or
"quasi-legislative[.]"  Jackson Court Condominiums, Inc., 874
F.2d at 1074.  This classification negates any procedural due
process claims relating to zoning ordinances.  Accordingly,
Plaintiff cannot allege that St. John the Baptist Parish's local
ordinances violated her procedural due process rights.

     Third, Plaintiff alleges that the defendants knowingly and
intentionally enacted ordinances which are unconstitutional and
in violation of her substantive due process.  Plaintiff does not
state why the zoning ordinances are overly broad and vague, she

simply states that the ordinances reach more broadly than is reasonably necessary to protect legitimate state interests. Nevertheless, upon analyzing Plaintiff's claims, it is apparent that her allegations are based on her inability to lease her property out to the potential tenants. This inability allegedly was the result of Defendant Stricks telling the potential tenants that they would be in violation of local ordinance R1-A if they moved into the property. Ordinance R1-A applies to Residential District One-A of St. John the Baptist Parish, Louisiana. In regards to residences, single-family detached residences are the only permitted use of properties located in Residential District One-A; multifamily residential use is prohibited. Sec. 113-192(1) & 194(1). The ordinance defines a family as:

> an individual or two or more persons related by blood, marriage or adoption, or group of not more than six persons (excluding domestic help) who need not be related by blood or marriage, living together in a single housekeeping unit as their common home for the time, as distinguished from a group occupying a boardinghouse, lodginghouse, hotel, club, fraternity or sorority house.

113-1. Accordingly, it appears that Plaintiff is challenging the ordinance's limitation on the definition of family. In Village of Belle Terre v. Boraas, 416 U.S. 1, 9 (1974), the United States Supreme Court analyzed a similar statute and held that the ordinance did not violate any substantive due process rights because the ordinance was not aimed at transients, did not

17

involve procedural due process disparity, and involved no fundamental right guaranteed by the Constitution. Id. at 8. In regards to the claim that the statute violated the fundamental right of association, the Court held that besides defining family, the ordinance placed no ban on other forms of association and the ordinance allowed the "family" to entertain whomever it likes. Id. at 8-9. Therefore, there was no violation of the right of association. Id.

The Court also stated that the types of living regimes restricted by the Village of Belle Terre ordinance, i.e. boarding houses and fraternity houses, present urban problems because they create the potential for excessive car traffic, excessive use of parking, and excessive noise. Id. at 9. Finally, the Court said that "police power is not confined to elimination of filth, stench, and unhealthy places[,]" and that "[i]t is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people." Id. Accordingly, the Court held that the ordinance bore a rational relationship to a permissible state objective and therefore, did not violate the substantive due process clause. Id. at 8.

The similarities between the ordinance in Village of Belle Terre and the one in the current matter are strikingly similar.

In fact, the primary difference is that the ordinance in <u>Village of Belle Terre</u> restricted the residential use of property for unrelated individuals to two (2) or less persons.  Here, R1-A restricts the residential use of property to six (6) or less unrelated individuals.  Therefore, the ordinance here is less restrictive than the one the United States Supreme Court held to be rational and constitutional in <u>Village of Belle Terre</u>.  Since the outside limit upon a state's exercise of its police power in zoning decisions is that they must have a rational basis, <u>see Shelton v. City of College Station</u>, 780 F.2d 475, 482 (5th Cir. 1986), this court does not believe it is plausible that Plaintiff can prove that the zoning ordinances, which are less restrictive than the <u>Village of Belle Terre</u> ordinances, are irrational.

Further, in her complaint, Plaintiff alleges that the ordinances were enacted to further the defendants' conspiracy to deny Plaintiff constitutionally guaranteed rights.  <u>See Rec. Doc. 22</u>, pg. 44, ¶ 145.  Presumably, Plaintiff is alleging that this reason is irrational and that a statute enacted for this reason should be unconstitutional.  However, this allegedly irrational reason is merely a legal conclusion which Plaintiff has stated in an attempt to fall within the realms of a valid substantive due process claim.  The court is not bound to accept as true such legal conclusions couched as factual allegations.  <u>Iqbal</u>, 129 S.

Ct. at 1949-50. In fact, legal conclusions "masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Taylor, 296 F.3d at 378. For these reasons, Plaintiff's claim that the ordinances violate her substantive due process clause rights must be dismissed.

*2. Equal Protection Clause of the 14th Amendment*

Plaintiff's claim under the equal protection clause would be held to the same rational basis scrutiny as discussed under Plaintiff's substantive due process claims. See, e.g., Village of Belle Terre, 416 U.S. 1. Therefore, Plaintiff's equal protection clause claims should be dismissed for the same reasons her substantive due process claims were dismissed.

*3. Assembly Clause of the 1st Amendment*

Plaintiff alleges that the defendants acted intentionally to prohibit "her from peaceable assembly, inside of, and on a public highway and public street outside [her] dwelling, all in violation of the First Amendment to the United States Constitution under the threat of arrest and detention." Amended Complaint, pg. 47. The First Amendment guarantees a right to associate for the purpose of engaging in assembly. Roberts v. U.S. Jaycees, 468 U.S. 609, 618 (1984). However, "[this right] does not reach as far as plaintiff suggests." Doe v. City of Butler, Pa., 892 F.2d 315, 322 (3d Cir. 1989) (rejecting the

20

argument that this right can be claimed in a zoning context).
Plaintiff alleges that Defendant Stricks told her potential
tenants that they would be in violation of a zoning ordinance if
they moved into Plaintiff's property.  She also alleges that
Stricks placed a written notice on the front door of the her
property, which stated that Plaintiff should contact Stricks
immediately concerning her violation of the ordinance.

    Assuming the veracity of these allegations, it is not
plausible that Plaintiff would be entitled to relief on her claim
that these actions violated her right to assemble with the
potential tenants.  Nothing in local ordinance R1-A prohibits
Plaintiff from meeting or assembling with the potential tenants.
At most, the ordinance, because of its zoning requirements,
arguably prohibits the potential tenants from assembling
themselves as residents inside of Plaintiff's property.  However,
such a zoning prohibition does qualify as a violation of the
First Amendment right to associate for the purpose of engaging in
assembly.  See e.g., Village of Belle Terre, 416 U.S. 1, 6-7; see
also City of Butler, 892 F.2d at 322.  Accordingly, Plaintiff's
First Amendment claims should be dismissed.

    *4.  Takings Clause of the 5th Amendment*

    Plaintiff next alleges that the defendants *per se* took her
property without just compensation, in violation of the Fifth

Amendment to the United States Constitution.  "[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue."  <u>Williamson County Regional Planning Com'n v. Hamilton Bank</u>, 473 U.S. 172, 186 (1985).  There is no indication in the record, and Plaintiff has not alleged, that St. John the Baptist Parish reached a final decision in their determination that Plaintiff could not lease her property to the potential tenants.  Instead, Plaintiff alleges that Stricks placed a notice of violation on Plaintiff's property and verbally told the potential tenants that they were possibly in violation of R1-A.  If Plaintiff would have taken steps to resolve this issue through administrative or state proceedings, or sought variances that may have allowed her to obtain a waiver from the ordinance, "a mutually acceptable solution might well [have been] reached . . . thereby obviating any need to address the constitutional questions."  <u>Williamson County</u>, 473 U.S. at 187 (citing <u>Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.</u>, 452 U.S. 264 (1981)).  However, Plaintiff failed to take any of these actions.  Therefore, her claim is not ripe for judicial resolution.  <u>Id.</u>

Further, even if Plaintiff had taken these actions but has simply failed to allege them, her takings clause claim must still be dismissed pursuant to Rule 12(b)(6).  Plaintiff alleges that the defendants *per se* took her property without just compensation.  The Takings Clause provides that private property shall not be taken for public use, without just compensation.  Lingle v. Chevron U.S.A. Inc., 544 U.S. 528 (2005).  There are two categories of regulatory action that generally will be deemed *per se* takings for Fifth Amendment purposes: (1) where government regulations require an owner to suffer a permanent physical invasion of her property; and (2) where government regulations deprive an owner of all economically beneficial use of her property.  Id. at 538.  Plaintiff has not alleged any facts that would allow this court to infer that it is plausible that local ordinance R1-A required her to suffer a permanent physical invasion of her property.  She has alleged that she suffered some economic loss when her potential tenants were "harassed" by Stricks.  However, she has not alleged that the ordinance deprives her of *all* economically beneficial use of her property.  Although R1-A somewhat limits Plaintiff's use of her property, the ordinance merely prohibits Plaintiff from leasing her property to certain groups of persons that are not considered a "family" as defined by the ordinance.  There is nothing in the

23

ordinance that prohibits Plaintiff from deriving economic

benefits by leasing her property in accordance with the

provisions of the ordinance.  Accordingly, the ordinance does not

deprive Plaintiff of all economically beneficial use of her

property and her takings claim therefore fails pursuant to Rule

12(b)(6).

**E.  42 U.S.C. § 1983**

Plaintiff alleges that defendants are liable under § 1983.

Section 1983 imposes liability on a person

> who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the
> District of Columbia, subjects or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws . . . ."

42 U.S.C. § 1983.  Therefore, the first inquiry in any § 1983

claim is whether the plaintiff has been deprived of any right

secured by the Constitution and laws of the United States.

Martinez v. Stated of Cal., 444 U.S. 277, 284 (1980) (citing

Baker v. McCollan, 443 U.S. 137, 140 (1979)).  As discussed

above, Plaintiff has failed to plead sufficient facts as to any

of her constitutional or federal claims.  Therefore, her § 1983

claim must be dismissed.

**F.  Louisiana Freedom from Discrimination Law**

Plaintiff alleges that the defendants' actions violated the Louisiana Freedom from Discrimination Act ("LFDA").  The LFDA was enacted to "safeguard all individuals within the state from discrimination because of race, creed, color, religion, sex, age, or national origin in connection . . . with public accommodations."  Deloach v. Delchamps, Inc., 897 F.2d 815, 825 (5th Cir. 1990) (citing La. Rev. Stat. Ann. § 51:2231).  As this court discussed above in relation to § 2000a, Plaintiff has not alleged that she was denied access to any public accommodations, she merely alleges that she was denied the right to lease her property to others.  Such a denial does not entitle Plaintiff to relief under the LFDA.  Therefore, Plaintiff's LFDA claim should be dismissed pursuant to 12(b)(6) because it is not plausible that she is entitled to relief.

**G.  Louisiana Real Property Law**

Plaintiff states that the defendants are liable under Louisiana Real Property Law but she does not state which property laws the defendants allegedly violated.  As a result, this claim should be dismissed as well.

**H.  Intentional Infliction of Emotional Distress**

Plaintiff alleges that defendants' actions caused her serious emotional injury, which resulted in embarrassment,

humiliation, the inability to carry on her normal profession, and severe emotional distress.  Plaintiff also alleges that because of the defendants' conduct, the defendants are liable for intentional infliction of emotional distress.  To recover for intentional infliction of emotional distress,

> a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991).  The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  Id.  Merely tortious or illegal conduct does not rise to the level of being extreme and outrageous.  Id. (citing Nicholas v. Allstate Ins. Co., 765 So. 2d 1017, 1025 (La. 2000)).

Assuming the veracity of the allegations Plaintiff stated in her complaint, it is not plausible to infer that she has a claim for intentional infliction of emotional distress.  Plaintiff alleges that Stricks harassed her potential tenants by telling them they would violate a local ordinance if they moved into Plaintiff's property.  She further alleges that Stricks then placed a notice on her door stating that Plaintiff may be in

violation of the ordinance.  The court does not believe these actions, or any of the defendants' other alleged actions, come remotely close to being classified as atrocious, utterly intolerable, or going beyond all possible bounds of decency. Accordingly, Plaintiff's intentional infliction of emotional distress claim must be dismissed.

### I.  Negligent Infliction of Emotional Distress

Plaintiff also alleges that the defendants are liable for negligent infliction of emotional distress.  Generally, a defendant will not be held liable under Louisiana law where the defendant's conduct was merely negligent and the emotional injury is unaccompanied by physical injury.  <u>Moresi v. State Through Depart. of Wildlife and Fisheries</u>, 567 So. 2d 1081, 1096 (La. 1990).  Plaintiff does not allege that she suffered any physical injury.  Therefore, she cannot recover damages under this general rule.

There are, however, exceptions to this general rule.  When the plaintiff does not suffer any physical injury, there are three ways in which the plaintiff can recover for a defendant's negligent infliction of emotional distress; all of which require "the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serve as a

guarantee that the claim is not spurious."[3] <u>Molden v. Georgia</u>

<u>Gulf Corp.</u>, 465 F. Supp. 2d 606, 614 (M.D. La. 2006) (citing

<u>Moresi</u>, 576 So. 2d at 1096).  First, a plaintiff may recover for

her emotional distress stemming from a defendant's negligent

actions when the distress is a result of a separate tort

involving physical consequences to the plaintiff's person or

property.  <u>Molden</u>, 465 F. Supp. 2d at 614.  Second, a plaintiff

who does not suffer any physical injury may recover when the

plaintiff is a direct participant in an accident causing the

emotional injury and the defendant owes a statutory duty to

refrain from the conduct that caused the accident.  <u>Id.</u> at 615.

Third, a plaintiff who has not suffered physical injury can

recover when she a) is a bystander that either views an accident;

b) is a bystander that witnesses the event causing an injury; or

c) arrives to an accident prior to a substantial change on the

scene.  <u>Id.</u>

    None of the aforementioned exceptions apply to Plaintiff.

Plaintiff does not allege that her distress is a result of

physical damage to her person or her property.  Nor does she

---

[3]There are actually four exceptions to the general rule that
there can be no recovery when the plaintiff does not suffer any
physical injury, however, the fourth exception deals with
intentional infliction of emotional distress – a topic this court
has already addressed.

allege that she was a bystander that witnessed or arrived at an accident or an injury causing event. Therefore, Plaintiff's negligent infliction of emotional distress claim must be dismissed because it is not plausible that she is entitled to relief for that claim.

**J. Tortious Interference with Business Dealings**

Plaintiff alleges that the defendants are liable because they tortiously interfered with her business relations. "Louisiana law protects the businessman from 'malicious and wanton interference, permitting only interferences designed to protect a legitimate interest of the actor.'" Junior Money Bags, Ltd. v. Segal, 970 F.2d 1, 10 (5th Cir. 1992) (citing Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 601 (5th Cir. 1981)).

To be successful in a tortious interference suit, a plaintiff "must show by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff." Junior Money Bags, 970 F.2d at 10. Defendants assert that Plaintiff has not alleged any facts from which a reasonable person could conclude that any of the defendants acted with malicious or wanton intent towards her or her business relationship with the potential tenants. Rec. Doc. 40, pg. 18. However, as stated numerous times above, this court must accept all well-pleaded facts as true and must draw all *reasonable*

inferences in favor of the plaintiff. <u>Lormand</u>, 565 F.3d at 232–33; <u>Baker</u>, 75 F.3d at 196 (*emphasis* added).

Plaintiff alleges that Stricks, without actual knowledge of whether the potential tenants were actually in violation of the local zoning ordinances, approached the potential tenants, with malice, harassed and threatened them, and influenced them not to move into Plaintiff's property. Plaintiff alleges facts that go into detail about the encounter between Stricks and the potential tenants. Accepting these well-pleaded facts as true, Plaintiff has alleged enough to show that it is plausible that Defendant Striks influenced the potential tenants to not lease Plaintiff's property.

However, Louisiana's tortious interference with business dealings allows interference designed to protect a legitimate interest of the actor. <u>Junior Money Bags</u>, 970 F.2d at 10. Defendant Stricks' actions were aimed at enforcing St. John the Baptist Parish's local zoning ordinances. As established in the substantive due process discussion above, this court believes that these zoning ordinances serve a rational relationship to a permissible state objective. As stated in <u>Village of Belle Terre</u>, "police power is not confined to elimination of filth, stench, and unhealthy places[,] [i]t is ample to lay out zones where family values, youth values, and the blessings of quiet

seclusion and clean air make the area a sanctuary for people."
Village of Belle Terre, 416 U.S. at 9. Accordingly, the parish
has a legitimate interest in protecting its zoning ordinances.
Defendant Stricks' acted in an attempt to enforce these
ordinances and thus acted in an attempt to protect the legitimate
interests of the parish. Consequently, she cannot be liable for
tortious interference with business dealings.

Plaintiff has not alleged any facts that allows this court
to infer that Defendants Hubbard, McTopy, and Henderson are
liable for tortious interference with business dealings.
Therefore, those claims are hereby dismissed as well.

**K. Racketeering Influenced and Corrupt Organizations Act
(RICO) – 18 U.S.C. § 1961, et. seq.**

In her amended complaint and in her RICO Case Statement,
Plaintiff asserts a myriad of allegations as to why Defendants
St. John the Baptist Parish, Stricks, Hubbard, McTopy, Henderson,
Jefferson Parish, Tim Whitmer, Aaron Broussard, Parson and
Sanderson, Inc., Hubbard Enterprises, Inc., Lagniappe Industries,
LLC, Dawn Whitmer, Pipeworks Plumbing and Demolition, LLC,
Davezac Consulting Engineers, LLC, Ray A. Davezac, and Jane and
John Doe(s) (the "RICO Defendants") are liable under civil RICO
statutes 18 U.S.C. §§ 1961, et. seq. The RICO Defendants assert
that Plaintiff has failed to state a valid RICO claim.

In order for Plaintiff to state a valid RICO claim, she must show that it is plausible that the RICO Defendants' alleged actions caused Plaintiff's alleged injuries.  See, e.g., Hemi Group, LLC v. City of New York, N.Y., 130 S. Ct. 983 (2010); Zervas v. Faulkner, 861 F.2d 823, 833 (5th Cir. 1988).  As stated in Zervas, "a defendant who violates section 1962 is not liable for treble damages to everyone he might have injured[.]" Zervas, 861 F.2d at 833 (citing Sedima v. Imrex, 473 U.S. 479 (1985)). In fact, a RICO plaintiff "can only recover to the extent that he has been injured in his business or property by the conduct constituting the RICO violation."  Zervas, 861 F.2d at 833. Although the Fifth Circuit has rejected the theory that a plaintiff's injury must be a direct result of the RICO violation, Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740 (5th Cir. 1989), a plaintiff can only recover for being injured by reason of the RICO violation if the predicate acts constitute factual (but for) causation and legal (proximate) causation of the alleged injury.  Id. at 744;  see also Holmes v. Securities Investor Protector Corp., 503 U.S. 258, 268 (1992) (stating the causation requirement is satisfied if the defendant's injurious conduct is both the factual and the proximate cause of the injury alleged).

In her RICO statement, Plaintiff alleges that the RICO

Defendants committed the predicate offenses of conspiracy to solicit and give bribes to a public official; wire fraud; money laundering; mail fraud; bribery of a public official; and various state ethical violations.  See Rec. Doc. 46, pgs. 22-25.  She then alleges that because of these offenses, she suffered the following injuries: (1) increased property taxes; (2) property appreciation at an annual rate of 8% less than it would have appreciated but for the RICO Defendants' alleged actions; (3) inability to develop and expand her business, A Plus Family Services, Inc.; and (4) invidious racial discrimination.[4]  Id. at pgs. 21-22.

In her pleadings, Plaintiff attempts to show a relation between the alleged predicate offenses and her injuries.  In relation to her claim of injury for increased property taxes, she states:

> Plaintiff has property valued at just over $500,000; with such property subjected to the taxation set by public officials in [St. John the Baptist and Jefferson Parishes].  Misappropriation of taxpayer dollars tend to drive up cost of public services, thereby causing an increased tax burden upon property owners, like

---

[4]Plaintiff's fourth alleged injury, invidious racial discrimination, is not an injury to business or property, and therefore, cannot be used as a basis for establishing standing under RICO.  See Zervas, 861 F.2d at 833 (stating that a RICO plaintiff "can only recover to the extent that he has been injured in his business or property").

Plaintiff. Plaintiff hereby alleges that since she has owned these properties, Defendants' collective illegal acts constitute 30% of the tax payments made.

Rec. Doc. 46, pg. 21. In regards to her claim of lack of

adequate property appreciation, Plaintiff states that the

defendants who hold public office owed her a duty of honest

services. She states that when such a duty is breached, there is

a downward pressure on the appreciative value of property. She

further states:

Public corruption is bad business, tending to have a negative impact on property values. But for the corruption of Defendants, Plaintiff's property would have appreciated at the rate of 8% per year greater than it has.

Id. at 21. Plaintiff then alleges that her inability to develop

and expand her business stemmed from the climate of corruption

created and fostered by the RICO Defendants. Id. at 21-22.

Finally, she alleges that because of the scheme created, wherein

the water permit process was used to ascertain the race of

residents, her constitutional rights were violated due to

invidious racial discrimination. Id. at 22.

Despite Plaintiff's attempts to link the alleged predicate

acts to her alleged injuries, this court finds that none of the

alleged predicate acts constitute factual "but for" or

"proximate" causation of the alleged injuries. A proximate cause

analysis requires "some direct relation between the injury

asserted and the injurious conduct alleged." <u>Hemi Group</u>, 130 S. Ct. at 989 (dismissing a RICO claim for failure to state a claim because the alleged injuries were not caused by the predicate offenses).  The link between the predicate offenses and injuries alleged by Plaintiff are even more attenuated than the link the United States Supreme Court found to be attenuated in <u>Hemi Group</u>. There, the City of New York alleged that the defendant's fraudulent acts of selling cigarettes to city residents, and failing to submit the required customer information to the State, resulted in the City not being able to receive necessary information from the State which it needed to levy taxes on the customers whom purchased the cigarettes.  <u>Id.</u> at 989.  In <u>Hemi Group</u>, the defendant filed a motion to dismiss, claiming that the City failed to state a valid RICO claim because the alleged predicate offenses were not proximately related to the alleged injuries.  The Court found the link between the defendant's actions and the City's inability to levy taxes to be too attenuated to qualify as proximate cause under a RICO analysis. Specifically, the Court stated, "[t]he City's injuries here were not caused directly by the alleged fraud, and thus were not caused 'by reason of' it.  The City, therefore, has no RICO claim." <u>Id.</u> at 994.

The same can be said about the link between the alleged acts

and injuries in this matter. Plaintiff has pled numerous predicate acts, offenses, and injuries, many of which this court is required to accept as true. Lormand, 565 F.3d at 232-33 ("A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff."). However, in regards to Plaintiff's attempt to link the alleged predicate offenses to the alleged injuries, this court does not believe that it is plausible that Plaintiff can prove a "but for" or proximate cause between the RICO Defendants' actions and her property value or her property taxes.[5] Nor does this court believe it is plausible for Plaintiff to prove a similar link between public corruption and the value of Plaintiff's property appreciating at a rate of 8% less than it allegedly should have, or between the climate of corruption and Plaintiff's inability to expand her business. These links are too remote, attenuated, and far too indirect to be sufficient to establish proximate cause for RICO purposes. Therefore, this court finds that Plaintiff has failed to state a claim for which relief can be granted under 18 U.S.C. § 1961. See, e.g., Hemi Group, 130 S. Ct. 983.

---

[5]It should also be noted that Plaintiff has not alleged that her property taxes were raised, she merely alleges that these acts "tend to drive up the cost of public services, thereby causing an increased tax burden upon property owners." Rec. Doc. 46, pg. 21.

## III. Motions for Sanction

After thoroughly reviewing Plaintiff's complaint, this court finds that although Plaintiff's complaint walks a fine line between having merit and being frivolous, the complaint is not frivolous.  A complaint is frivolous "if it lacks an arguable basis in law or fact."  <u>Reeves v. Collins</u>, 27 F.3d 174, 176 (5th Cir. 1994).  In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989); <u>Macias v. Raul A. (Unknown), Badge No. 153</u>, 23 F.3d 94, 97 (5th Cir. 1994).  It is apparent that Plaintiff strongly believes that she was wronged by the actions of the defendants. However, this court finds that the legal theories advanced by Plaintiff lack merit.  Nevertheless, this court does not believe that Plaintiff should be sanctioned for filing her complaint, amended complaint, and the RICO Statement.

### CONCLUSION

Based on the foregoing, **IT IS ORDERED** that the following motions are hereby **GRANTED**: Defendants St. John the Baptist

Parish, Debbie Labit Stricks, William J. Hubbard, Patrick McTopy, and Mike Henderson's **Motion to Dismiss (Rec. Doc. 40);** Defendants Jefferson Parish, Tim Whitmer, and Aaron Broussard's **Motion to Dismiss (Rec. Doc. 48);** Defendant Parson and Sanderson, Inc.'s **Motion for Summary Judgment or Alternative Motion to Dismiss (Rec. Doc. 57);** Defendant Hubbard Enterprises, Inc.'s **Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) for Lack of Standing, and Pursuant to F.R.C.P. 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted (Rec. Doc. 74);** Defendant Tim Whitmer, Lagniappe Industries, LLC, and Dawn Whitmer's **Motion to Dismiss Case (Rec. Doc. 76);** Defendants Aaron F. Broussard's **Motion to Dismiss (Rec. Doc. 126);** and Defendant Pipeworks Plumbing and Demolition, LLC's **Motion to Dismiss (Rec. Doc. 130),** and supporting memoranda.

Also, it is **ORDERED** that the following motions are **DENIED:** Defendant St. John the Baptist Parish, Debbie Labit Stricks, William J. Hubbard, Patrick McTopy, and Mike Henderson's **Motion for Sanctions (Rec. Doc. 52)** and Defendants Jefferson Parish, Tim Whitmer, and Aaron Broussard's **Motion for Sanctions (Rec. Doc. 66).**

**IT IS FURTHER ORDERED** that Plaintiff's **Motion for this Court to Take Judicial Notice of Certain Defendants Guilty Pleas in**

**Pending Criminal Matters (Rec. Doc. 134)** is hereby **DENIED** as **MOOT**.

Accordingly, all of Plaintiff's claims are hereby **DISMISSED**. She is not, however, subject to any sanctions by this court.

New Orleans, Louisiana, this __8th__ day of __September__, 2010.

_____
United States District Judge